THE MISSOURI PACIFIC RAILWAY COMPANY v. MARY A. BARBER, *as Administratrix of the estate of J. F. Barber, deceased.*

1. PETITION *Under ? 422 of Civil Code.* In an action brought under ? 422 of the code by the administratrix of an intestate, whose death it is alleged was caused by the wrongful act of a railroad company, to make the petition sufficient in that respect it is only necessary to allege that the deceased left surviving him, as next of kin, the plaintiff, who was his mother.

2. FREIGHT CAR—*Defective Brake-beam—Duty of Company.* It is the duty of a railroad company to inspect a freight car, and to see that it is reasonably fit for service, before it is received from another company; and in the event that a freight car is received with a brake-beam in such a defective condition that a brakeman, whose duty it is to couple the foreign car with those used by the company receiving it, is injured in his attempt to make such coupling, and the brakeman has no knowledge of the condition of such brake-beam, and its condition cannot be readily seen, the company that employs him and received such car in a defective condition is liable for such injury.

*Error from Morris District Court.*

THE opinion contains a sufficient statement of the case. Judgment for the plaintiff *Barber,* at the April term, 1888,

for $4,000 damages. The defendant *Company* brings the case to this court.

*David Kelso*, for plaintiff in error.

*J. K. Owens*, *L. B. Kellogg*, and *T. N. Sedgwick*, for defendant in error.

Opinion by SIMPSON, C.: This suit was commenced on the 22d day of February, 1887, in the district court of Morris county, by Mary A. Barber, administratrix of the estate of J. F. Barber, deceased, to recover damages against the Missouri Pacific Railway Company for the death of the said J. F. Barber, caused by the wrongful acts of the railway company. The petition alleges that the intestate, at the time of his death, left surviving him as his next of kin this plaintiff, who was and is his mother. The first question raised is that the petition does not state a cause of action. This question was raised by an objection to testimony under the petition, and by a demurrer to the evidence. The argument in support of it contained in the brief of the plaintiff in error is, "that the plaintiff below had no right to sue and recover a judgment in this case for her individual benefit." "There is no allegation that he did not leave a widow or children." "The mother's right to recover in this case is dependent upon the non-existence of a widow or children of the intestate, which she must allege and prove."

This action is brought under § 422 of the civil code by the personal representative of the deceased, and in the event of a recovery the judgment inures to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased. A judgment in favor of the personal representative of the deceased is a bar to any other action for the same cause. The distribution of the amount of the recovery is a matter to be determined by the probate court, out of which the letters of administration issue. It does not concern the railroad company. This action is rightfully brought by the personal

representative, and all allegations about next of kin are only for the purpose of showing that the deceased left heirs. There is no force in the objection to the sufficiency of the petition.

The deceased was a young man about nineteen years old, contributing to the support of his mother, and employed as a brakeman on the train of the defendant railroad company. He was killed at Emporia, early in the morning, while in the act of coupling two freight cars. One of these cars was the ordinary freight car in use on that road, with a single dead-wood bumper; the other was a Pennsylvania Central freight car, having double dead-wood bumpers — one on each side of the draw-head. The standing car was the Missouri Pacific one; the Pennsylvania Central car being the moving one. The brake-beam of the moving car was out of repair, swinging loose in such a manner that when the cars struck together it swung entirely out of its place and struck the deceased (who was endeavoring to make a difficult coupling) on the legs, knocked him down onto the track, lacerated and injured one of his limbs, by stripping off the flesh to the bone from near the ankle to the knee, held him fast, and caused his death.

It is said by counsel for plaintiff in error that there is no evidence that tends to show that the death was caused by the brake-beam. The only witness who was standing in a position to clearly see, so states. He was an employé of the railroad company; he is illiterate and unskilled in expressions, but his story is a well-connected narrative, and consistent in every respect; and in addition to this, the defective condition of the brake-beam is established by other evidence. The railroad company offered no evidence. The injury resulting in the death of the young man is not attempted to be accounted for on any other theory. The fact of injury, resulting in death, occurring at the time the deceased was engaged in making the coupling of these particular cars, is established beyond question. The defective condition of the brake-beam is fairly well proven, and this supports the story of the eye-witness,

and makes it consistent with all the attending circumstances. Under the stress of these facts, the jury could not have come to any other conclusion but that the death was occasioned by the defective brake-beam.

The remaining questions in the case arise out of the inquiry as to whether the railroad company or the brakeman had notice of this defective brake-beam. The record gives no account of the Pennsylvania car, except at Emporia, on the morning the injuries happened; it is equally silent as to the train — where it was made up, and as to its destination. If it was received that morning at Emporia by the Missouri Pacific Railway Company from another company, it was the duty of the former company to have inspected it carefully, and if it was not reasonably fit for use, it should not have been received. See generally on this subject the case of *Gutridge v. Mo. Pac. Rly. Co.*, 94 Mo. 468, the court saying:

. "The defendant contends that it had a right to assume that the car, being a foreign one, was reasonably safe and fit for the uses for which it was being used. We do not agree to the proposition as thus broadly stated. If the car had obvious defects which render it unfit for use, defendant was under no obligations to receive it, and should not have received it. Cars coming from one road to another must necessarily be subjected to wear, and are liable to be rendered unfit for use in the course of transportation, and this must be known to the receiving company. It is but the result of the most common observation. While it is not incumbent on the receiving company, on the receipt of the car, to make tests to discover hidden defects in the construction or in the materials used in the construction, still it is bound to inspect foreign cars just as it would, and is required to inspect, its own after they have been in use. This duty devolves upon the company as much in the one case as in the other."

This commends itself to our judgment as being a clear exposition of the law on this question. It was the primary duty, then, of the Missouri Pacific Company, to have made such a careful inspection of the foreign car as to be reasonably well satisfied that it was in all respects fit for use on its road. This duty the company failed to perform. It is true

that Bosman, the company's car inspector and repairer, testifies that he made an inspection of this car, but he states that he did so as the train moved slowly past him. He failed to discover any defects, and it must have been a glaring one that could be noticed by such an inspection. Even after the accident he made an inspection, and failed to notice any defect in the brake-beam that is established by the evidence of McGinnis. This neglect of the company's agent to make a reasonable inspection of the condition of the Pennsylvania car before its reception is one of the important facts tending to fasten liability. The company receiving the car must act first; then it was the duty of the deceased to have noticed the defect if its condition was patent to all observers. In this case he was required to make a coupling to this particular car for the first time, so far as we know and the record discloses. Unless the defect was a patent one, or he had knowledge of it, he had the undoubted legal right to assume that the car was in a fit condition for use. So far as the evidence contained in the record discloses, the first time that young Barber ever saw this car was when he was called upon to make a coupling to it as it stood on the track. We then have this case presented by the record : A foreign car with a defective brake-beam causes such injuries to the brakeman that his death resulted. If the company did not know of the defect at the time of the reception of the car from another company, a reasonable inspection would have disclosed it. No such inspection was made — or, rather, was shown. The brakeman had a right to assume that the car was fit for service by reason of its reception by the company, unless the defect was one that could easily have been discovered, or he had actual knowledge of the same. These views were substantially embodied in the various instructions given by the court to the jury, so that we find no tenable objection to any of these instructions, except as to the sixth, and as to that instruction a vigorous fight is waged. The instruction reads as follows :

"It is the duty of a railroad company toward those who are

in its employ to furnish suitable cars, constructed of good and sound material, so far as this is reasonably practicable, having in view the business done upon the road.  In their construction they should equal those of the average roads doing the same class of business, so far as relates to the safety of its employés, and the care and vigilance which is reasonably practicable must be bestowed by the company to keep them in safe condition."

The deserving criticism on this instruction is confined to the words therein, "in their construction they should equal those of the average roads doing the same class of business." Not that they are so bad of themselves, but because there was no evidence in the case descriptive of the construction of this foreign car, except that it had double dead-wood bumpers, one on each side of the drawhead, and that the brake-beam was in a defective condition.  The first is material as tending to show that the brakeman was engaged in making a novel and dangerous coupling, and the other is material because it is alleged to be the proximate cause of the injury.  No general description of the car was alleged or proved.  Admitting that this language ought not to have been used in the instruction, we have to go still further, if we reverse this judgment, and say that it is of such a character that the railroad company was necessarily prejudiced by it; that it was in some measure influential in controlling the jury in favor of a verdict for the plaintiff below.  This we cannot do.  There is nothing in the use of the language that would authorize such an inference, and there is no showing that it was prejudicial.

Upon the whole record, having an abiding conviction that the evidence which went to the jury justified the verdict, and that the law applicable to the facts established was fairly stated in the instructions of the trial court, we recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.