THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. WILLIAM H. PENFOLD.

No. 8496.

1. INJURY TO EMPLOYEE—*Inspection of Cars of Other Companies.* It is the duty of a railroad company to inspect cars owned by or received from another company, which the employees of the former company are required to handle or use, where there is time and opportunity to do so, and it will be liable to its employees for injuries resulting from defects in such cars which an ordinary inspection would have discovered.

2. ———— *Insufficient Excuse for the Omission.* It will not be excused for failure to perform that duty because such cars are only used for a brief time or carried a short distance, nor will the mere fact that the company is not required to repair defects relieve it from the obligation to inspect.

*Error from Atchison District Court.*
*Hon. Robert M. Eaton, Judge.*

AFFIRMED. OPINION FILED JULY 11, 1896.

STATEMENT BY THE COURT.

THIS was an action by William H. Penfold, who was employed by the Atchison, Topeka & Santa Fe Railroad Company at Atchison as switchman, to recover damages for personal injuries suffered by him through the alleged negligence of the company. On April 9, 1889, while in the performance of his duties, he undertook to go down the ladder on the side of a Missouri Pacific car. He seized the handhold on the top of

the car, swung himself down, attempted to step upon one of the rounds of the ladder, the end of which being unfastened and displaced gave no support, throwing the weight of his body upon his right shoulder and seriously injuring it, and, his handhold giving way, he fell to the platform below. His injuries are alleged to be serious and permanent. The injury occurred in the lumber-yards of Howell, Jewett & Co., in Atchison, in close proximity to the yards of the railroad company. The tracks of the several railroad companies operating in Atchison connect with the railroad-tracks of the lumber company in the lumber-yards, and cars are placed in and taken out of the yards by the switching crews of the several railroad companies. When cars arrived on either of the railroads, billed to Howell, Jewett & Co., the switching crew of that railroad company placed them in the lumber-yards; and when cars were loaded in the lumber-yards to go out over either of the railroads, the switching crew of that railroad company would take the cars out of the yards to the track of the railroad company over which they were to pass to their destination. At times a large number of cars accumulated on the tracks in the lumber-yards, placed there by the several railroads that enter the city of Atchison, and, being mixed up, it was frequently necessary in taking cars out to pull or push the cars of other companies, not to be taken, out of the way so as to get the cars desired. When cars were to be taken out, the lumber company furnished to the railroad company a list designating the car or cars by the numbers thereon and the tracks in the lumber-yards on which they would be found. The yardmaster of the railroad company would then mark each car to be taken out according to the list furnished, and it was the duty of the switching crew to take such cars out as were so marked.

On the day mentioned, a list of cars to be taken out was furnished by the lumber company to the railroad company, and the yardmaster proceeded with the switching crew to the lumber-yards.   There the yard-master found a string of cars, 17 in number, standing in close proximity to one another upon a certain track, and walking down the side of this string of cars he marked several of them that were to be taken out. The switch-engine was then attached and they pro-ceeded to put out the cars that were not to be taken, for the purpose of getting other cars that were behind them and which were to be taken.   Penfold started over the top of the cars to loosen any brakes that might be set, and having finished that task he started to descend to the ground upon the ladder of the Mis-souri Pacific car above mentioned, when the casualty occurred.   The car from which he fell had been placed in the yards by the Missouri Pacific Railway Company, and it was the practice of each railroad company to inspect its own cars and those received by it from other railroads only, and the place for inspecting cars by the defendant road was in its own yards and on its own tracks in the city of Atchison.

Upon the trial, the jury found that the injury was the result of the company's negligence, and that the plaintiff below was in the exercise of due care when the injury was inflicted.   In their verdict they awarded damages in the sum of $3,750.   The railroad company complains.

*A. A. Hurd*, and *Mills, Smith & Hobbs*, for plaintiff in error.

*Fenlon & Fenlon*, and *J. T. Allensworth*, for defend-ant in error ;  *W. L. Bailey*, of counsel.

The opinion of the court was delivered by

JOHNSTON, J. : There is but little dispute as to the facts of the case, but it is contended that they do not show actionable negligence by the railroad company nor warrant a recovery of damages against it. Three reasons are suggested why a recovery cannot be had : (1) That the car from which Penfold fell was not in the service of the company ; (2) that the company had no notice of the defect in the car nor opportunity to repair it ; (3) that it was a sudden and unexpected use of a car of another company ; that the officers and employees who should superintend the condition of cars had no opportunity to observe the defect, and that Penfold himself was the only person who had an opportunity and who should be held to have knowledge of the defect. Although the company did not own the tracks in the lumber-yards, they were used by permission in the conduct of its business, and the company was, therefore, required to use the same due care toward its employees as if the tracks had been its own. The company not only had the use of the tracks, but it also had the right to move any cars which were necessary to be moved in order to take out those which were billed and marked for shipment. When the lumber company furnished a list of the cars to be taken, the yardmaster of the railroad company from that list marked the cars that were to be taken, and in that way learned the location of the cars to be moved and which the switching crew must necessarily handle. The defective car belonged to the Missouri Pacific Railway Company and it was only to be shifted to another part of the yards so as to reach the loaded cars behind it.

It is contended that as the company did not own the defective car and had no right to repair the same it

could not be required to inspect it. We think the contention is not sound. It was necessary for the company to move the car and it had the right to do so. It knew in advance that this particular car would have to be moved. Through the yardmaster the company learned that the car must be moved before the switching crew began to move it. True, it was only to be moved a short distance, but the care which the company must exercise over the instrumentalities provided for its employes in the transaction of its business can hardly be measured by the distance they are to be moved or the length of time employed in using them. If the same car had been loaded for transportation by the plaintiff in error to some point a hundred miles or more away, and the switchman had been injured in the same way in the attempt to move it, it would hardly be contended that the obligation to inspect did not rest upon the company, and yet the opportunity to inspect would have been no better than it was in the case in question. The company was bound to use reasonable care to prevent injuries to its employees. To that end it was required to exercise due diligence in providing Penfold with a reasonably safe place to work and reasonably safe appliances and instrumentalities to work with and upon. The fact that it had not been the practice of this company to make a regular inspection of such cars in the lumber-yards does not relieve it from its obligation to inspect. In *Mo. Pac. Rly. Co. v. Barber*, 44 Kan. 612, it was held to be the duty of a railroad company to inspect a foreign freight-car just as it is required to inspect its own, to see that it is reasonably fit for use, and that the omission of this duty renders it liable for resulting injuries to its employees. See, also, *A. T. & S. F. Rld. Co. v. Seeley*, 54 Kan. 21. The switchman was obliged to handle the car, and this

the company knew before he undertook it. It was an instrumentality temporarily used by the company, and over which, for the time being, it had control. The fact that the company had no right to repair that car did not relieve it from the duty of inspecting it to ascertain whether it was in safe condition for the use which its employees were to make of it. If the inspection had been made and the defect discovered the switchman could have been warned of it and the injury averted. There was an opportunity to inspect, and the duty in the first instance rests upon the company. An ordinary inspection would have discovered the broken ladder, and if Penfold had been notified of the defect he could have descended in another way. It appears that the defect was unknown to Penfold, and that he had no reasonable opportunity to discover it prior to the accident. His work was to be performed with promptness and dispatch, and the duty of inspection did not necessarily rest upon him. In the absence of notice to the contrary, he had a right to assume that the cars which he was to handle were reasonably safe, and that in the use of them he would not be exposed to danger through the negligence of the company.

The charge of the court, though somewhat general, presented the law of the case to the jury, and we do not discover that any prejudicial error was committed in the rulings upon the instructions, nor is there good cause to complain of the refusal to submit special questions to the jury. A large number of questions were submitted, and we think no proper or material question was refused. Nor can we say from the testimony that the amount awarded by the jury is excessive.

The judgment of the district court will be affirmed.

All the Justices concurring.