## ATCHISON, T. & S. F. RY. CO. v. LAMBERT.

### No. 1748. Opinion Filed April 9, 1912.

### (123 Pac. 428.)

1. **CONSTITUTIONAL LAW—Operation and Effect—Self-Executing Provisions.** Section 43 of article 9 of the Constitution, which provides, amongst other things, that suit may be maintained against a foreign corporation in the county where an agent of such corporation may be found, or in the county of the residence of the plaintiff, or in the county where the cause of action arose, is self-executing.

2. **CORPORATIONS — Foreign Corporations—Actions—Venue.** Under section 43 of article 9 of the Constitution, suit may be brought against a foreign corporation operating a line of railway in this state, in the county where the plaintiff resides, although the cause of action did not arise there, and although the defendant has no ·service agent in that county, and when there is no part of its line of railway therein.

3. **SAME.** Section 43 of article 9 of the Constitution applies to public service corporations, as well as private corporations.

4. **SAME.** Section 5584, Comp. Laws 1909 (Sess. Laws 1907-1908, p. 592, sec. 5), providing the venue of actions against transportation or transmission companies, and which does not permit such actions to be brought in the county of the residence of the plaintiff, cannot have the effect of restricting or limiting the right of the plaintiff to sue such a company, when a foreign corporation, in the county of his residence pursuant to the provisions of section 43 of article 9 of the Constitution.

5. **CARRIERS—Carriage of Live Stock—Actions—Issues and Proof.** In an action to recover the value of a car load of live stock, where there is no negligence alleged and the only breach of contract pleaded is the loss of the live stock at Gallup, N. M., it is error for the court to admit evidence tending to show injuries at Seligman, Ariz., as such an issue is in no manner raised by the pleadings.

6. **SAME—Evidence.** In an action to recover damages for the loss of live stock shipped from Arizona to Oklahoma, where the defendant pleaded certain provisions of the shipping contract as a defense to the action, and alleged that these provisions were valid under the laws of Arizona, and at the trial offered evidence tending to. prove the laws of Arizona, it was error for the trial court to exclude this evidence.

7. **EVIDENCE—Judicial Notice—Laws of Other States.** The laws of other states are facts to be established by competent evidence, and the courts of this state cannot take judicial notice thereof.

8. **SAME—Statutes—Admissibility—Experts.** The best evidence of the statutory law of another state is the statute itself, while the unwritten or common law may be proved by expert evidence.

9. **TRIAL—Right to Open and Close—Argument of Counsel.** The party bearing the burden of proof has the right to open and close the argument. His opening argument should be a complete and fair presentation of his theory of the case. When such an argument is made, if the opposing party elects not to reply, this should close the argument. If the party upon whom rests the burden makes an incomplete or inadequate opening statement, and the opposing party does not reply, no further argument should be allowed, unless the court in the exercise of its sound discretion and in the interest of justice thinks the party upon whom the burden rests should be allowed to make a further opening. In that event the opposing party should be allowed to answer, if he desires, and the party upon whom the burden rests should be allowed to close.

(Syllabus by Ames, C.)

*Error from District Court, McIntosh County;*
*Preslie B. Cole, Judge.*

Action by H. D. Lambert against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Cottingham & Bledsoe, Charles H. Woods,* and *Geo. M. Green,* for plaintiff in error.

*C. H. Tully,* for defendant in error.

Opinion by AMES, C. This action was brought by the plaintiff, H. D. Lambert, against the defendant, the Railway Company, to recover $1,999 for failure to deliver a car load of horses and mules, shipped from Seligman, Ariz., to Muskogee, Okla.; it being alleged that they were allowed to escape from the custody and control of the Railroad Company at Gallup, N. M. The plaintiff was a resident of McIntosh county. The defendant was a foreign corporation, operating a line of railroad in the state of Oklahoma and other states, but this line of railroad did not enter McIntosh county, and the defendant did not have any agent for service in that county. Suit was brought in McIntosh county, and service was obtained by delivering the summons to the state service agent of the defendant residing at the capital.

The first question for determination is whether suit was properly brought in McIntosh county. The plaintiff, in support of his right to bring the suit in that county, relies upon section 43 of article 9 of the Constitution, which is as follows:

"No corporation, foreign or domestic, shall be permitted to do business in this state without first filing in the office of the Corporation Commission, a list of its stockholders, officers, and directors, with the residence and postoffice address of, and the amount of stock held by each. And every foreign corporation shall, before being licensed to do business in the state, designate an agent residing in the state; and service of summons or legal notice may be had on such designated agent and such other agents as now are or may hereafter be provided for by law. Suit may be maintained against a foreign corporation in the county where an agent of such corporation may be found, or in the county of the residence of plaintiff, or in the county where the cause of action may arise."

The defendant, in support of its position that the district court of McIntosh county had no jurisdiction over it, relies upon section 5584, Comp. Laws 1909 (Sess. Laws 1907-1908, p. 591), which reads as follows:

"Actions may be commenced against any transportation or transmission corporation or company in the county where any person resides upon whom service of summons is authorized to be made, irrespective of the order in which such persons are named in this act, and irrespective of the residence of any superior officer or authorized person upon whom service of summons may be had. Or, in the county where the cause of action, or some part thereof may have accrued; or, in case of a transportation or transmission company in any county through which or into which the lines of road or any part of the structure or any transportation or transmission company may be, or passes; and the plaintiff may elect in which county he will bring any action."

It will be observed that the provision of the Constitution above quoted and this section of the statutes are not in harmony, as the Constitution permits suit to be brought against a foreign corporation "in the county where an agent of such corporation may be found, or in the county of the residence of plaintiff, or in the county where the cause of action may arise," while the

statute authorizes actions to be commenced against railroad companies in the county where any service agent resides, or where the cause of action arose, or where any part of the line of road may be. The difference is that under the constitutional provision the action may be brought in the county of the residence of the plaintiff, while under the statute it may not be. In this case the plaintiff resides in McIntosh county, but the defendant has no service agent there, the cause of action did not arise there, and the defendant has no part of its line of railroad in that county.

The argument of the defendant is that the constitutional provision does not apply because it was designed to apply to private corporations only, and not to railroads, and that the section of the statutes quoted, being passed by the first Legislature after the adoption of the Constitution, amounts to a legislative construction thereof.

It is not argued that this section of the Constitution is not self-executing, so that we may assume that it is, and this conclusion is supported by the principles laid down by this court in *Ex parte Cain,* 20 Okla. 125, 93 Pac. 974; *Ex parte Wagner,* 21 Okla. 33, 95 Pac. 435, 18 Ann. Cas. 197; *State ex rel. Edwards v. Millar,* 21 Okla. 448, 96 Pac. 747; *State ex rel. Reardon v. Scales,* 21 Okla. 683, 97 Pac. 584; *Ex parte McNaught,* 23 Okla. 285, 100 Pac. 27, and other decisions. See, also, the annotations of this section in Williams' edition of the Constitution.

We pass, therefore, to a consideration of the question as to whether this section of the Constitution (section 43, art. 9) applies to private corporations only. Article 9 deals with corporations. Section 1 is a definition. Following this is a subhead entitled, "Railroad and Public Service Corporations." Then follow sections 2 to 14. Following these is a subhead entitled "Corporation Commission." Then follow sections 15 to 35. Then follows section 36 under the subhead "Fellow Servants." Next comes section 37 under subhead "Passenger Fare." Then come sections 38 to 48 under the subhead "Private Corporations," and,

of course, if the argument that section 43 applies only to private corporations be sound, then it follows that the same is true of sections 38 to 48, both inclusive. Section 39 imposes restrictions upon the issuance of the stocks and bonds of corporations. It is not reasonable to believe that the framers of the Constitution intended these limitations to apply to private corporations and not to public service corporations. Section 40 prohibits any corporation from influencing elections, or official duty, by contributions of money or anything of value. It is hardly probable that the convention which framed, and the people who adopted, this section, intended to prohibit a private corporation from improperly influencing elections, and not to likewise prohibit public service corporations. Indeed, this evil here sought to be corrected is one which the current history of the times the country over lays at the doors of the public service corporations more than at the doors of private corporations. Section 41 restricts the ownership by corporations of the stock of competing corporations, and there is as much reason to believe that this section was intended to apply to public service as to private corporations. Section 42 is as follows:

"Every license issued or charter granted to a mining or public service corporation, foreign or domestic, shall contain a stipulation that such corporation will submit any difference it may have with employees in reference to labor, to arbitration, as shall be provided by law."

It will be noticed that this by its terms applies only to mining and public service corporations; and it is argued by the defendant that, as this section is made by its terms to apply to public service corporations, we should conclude that the other sections were not so intended. We think, however, that the use of the term "mining or public service corporation" in this section, instead of being intended to make it more inclusive, was intended to make it less inclusive, so as to exclude from its operation private corporations other than mining corporations. If the framers of the Constitution had intended this section to apply to all corporations they would have doubtless followed the phraseology of the sections immediately preceding, and sec-

tion 43, immediately succeeding, and the fact that they excluded all other corporations, except those mentioned, instead of supporting the position of the defendant, it seems to us militates against it. On the face of the Constitution alone, therefore, it seems to us that public service corporations are included within the provisions of this section 43. This conclusion is also supported by the definition of "corporation" in section 1 of this article.

But it is argued that the first Legislature by the enactment of the statute which has been quoted placed legislative construction on this section of the Constitution which we should follow, and there would be much force in this argument were it not for the fact that a careful analysis of the legislative act indicates clearly that it is entitled to no weight whatever, as a construction of the Constitution, because it prescribes a rule different in many particulars from that embodied in the Constitution. The section relating to transportation and transmission companies. (Comp. Laws 1909, sec. 5584, *supra*) differs from the Constitution in that it does not permit such companies to be sued in the county where the plaintiff resides. Sections 5587 and 5589 are as follows:

"In addition to the other counties in which an action may be brought against a non-resident of this state, or a foreign corporation, such action may be brought in any county in which there may be property of, or debts owing to such defendant, or where such defendant may be found; if such defendant be a foreign insurance company the action may be brought in any county where such cause of action, or any part thereof, arose, or where the plaintiff resides or where such company has an agent."

"Every other action must be brought in the county in which the defendant, or some one of the defendants, reside or may be summoned."

It will be observed from an analysis of these two sections that foreign insurance companies are the only ones which may be sued in the county where the plaintiff resides, and that every other foreign corporation must be sued in the county where it may have property, or where its service agent may be found.

This is in plain conflict with the Constitution, even under the construction given it by the defendant, as it does not permit private corporations, except insurance companies, to be sued in the county where the plaintiff resides. Instead, therefore, of the legislative construction adding weight to the argument of the defendant, it is apparent that it was framed without an understanding of the provision of the Constitution, and that both in respect to railroads and to private foreign corporations it announces a rule in conflict with the Constitution. We conclude, therefore, that the district court of McIntosh county had jurisdiction of the cause of action on account of the fact that the plaintiff resided in that county.

The next error assigned is that the court erred in admitting the testimony tending to show injuries to the horses of the owner, caused by the defective condition of the loading chute at Seligman, Ariz. This assignment is well taken. The breach of duty alleged in the petition is solely the failure of the defendants to deliver the live stock at Muskogee by permitting them to escape at Gallup, N. M., as will more fully appear from the following paragraphs of the petition:

"And that on or about the 20th day of October, 1908, the said plaintiff delivered to the defendant, at the station of said defendant at Seligman, in the territory of Arizona, and entered into a contract with said defendant for a valuable consideration, to safely transport from Seligman, Ariz., to Muskogee, Okla., one car of horses and mules to the value of $1,999, a copy of which said contract is hereto attached and marked 'Exhibit A,' and made a part of this petition. And plaintiff avers that said defendant has wholly failed to discharge said part of said contract and has never delivered said horses and mules, or any one of them to said plaintiff, or any one of them at Muskogee, Okla., or to any other place, but permitted said horses and mules to escape from its custody and control at Gallup, N. M., and thereby causing, without any fault on the part of the plaintiff, the said plaintiff to lose all of said horses and mules, to the damage of the plaintiff in the sum of $1,999."

It will be observed that there is not the slightest hint of an allegation of injury at Seligman, Ariz., nor is there the remotest reference to the defective chute at that place or elsewhere. The

only breach of the contract alleged is the permitting of the horses to escape at Gallup. This was the issue raised by the pleadings, and it is manifest that it was error to admit evidence not relating to this issue. It is so fundamental that the proof must correspond with the allegations that it is wholly unnecessary to refer to authorities on this proposition.

The ruling of the court excluding evidence tending to show that this shipping contract was valid under the laws of Arizona is assigned as error. We think this assignment is well taken. The testimony shows that the plaintiff signed this shipping contract freely. This is expressly admitted. There were two kinds of contracts he might avail himself of. He took his choice, and by so doing secured a lower rate. Under and by virtue of the terms of this contract, it is provided, amongst other things:

"That at his or their own risk and expense the shipper will load the stock at the first named station, take care of, feed, and water and attend to same while they may be in the stockyards of the company, or lots where awaiting shipment, and while the same is being loaded, transported, unloaded, and reloaded, and to load, unload, and reload the same at feeding and transfer at the points wherever the same may be unloaded, for any purpose whatever, and will properly attend to and care for the stock while in the cars in transit, or otherwise, and hereby agrees that the company shall not be liable for any loss or damage to said stock while being so in the shipper's charge, and so cared for and attended to by the shipper or his or their employees as aforesaid; and, in cases where the company shall furnish laborers to assist in loading, unloading, or reloading of said stock, it is understood that they are furnished for the accommodation of the shipper, and they shall be entirely subject to the shipper's orders, and shall be deemed the shipper's employees while so engaged, and the company shall in no wise be responsible for their acts or negligence."

If this paragraph was valid under the laws of Arizona, it would furnish a complete defense in this case. It has already been stated that the suit is for breach of contract. No negligence is alleged. No defect in the pens or loading chutes, no breach of any common-law duty as carrier, is alleged. Absolutely the only ground of recovery alleged is that the defend-

ant permitted the live stock to escape at Gallup, N. M. This contract was entered into freely by the plaintiff, and as matter of choice, in order to secure a lower freight rate. The evidence shows that the live stock were unloaded at Gallup by the plaintiff, who was accompanying them; that they were fed in the stock pens by the plaintiff; that the plaintiff fastened the gates and went to the town, which was about a mile away; and that upon his return the live stock were out. It is not shown how they got out. There being no allegation of negligence, no allegation of defective facilities, but merely the allegation that the defendant permitted the stock to escape, the provision of the contract quoted, if valid, was manifestly a complete defense. The defendant pleaded that it was valid under the laws of Arizona, and offered evidence tending to prove it. This offer was refused. This was error.

That the laws of other states are facts which must be pleaded and proved, and that our courts cannot take judicial knowledge of them, is established by our statute. Comp. Laws 1909, sec. 5890; *Cole v. District Board of School District No. 29, post,* 123 Pac. 426.

The testimony offered for the purpose of proving the laws of Arizona was that of an attorney residing in that territory and professing thorough familiarity with its laws. Such evidence is competent evidence of the common law, although the best evidence of statutory law is the statute itself. *Cole v. District Board of School District No. 29, supra.*

It is also urged that the court committed error in its rulings affecting the argument of counsel to the jury. The record discloses that upon the conclusion of the evidence one of the attorneys for the plaintiff made an argument to the jury. The record does not disclose the length of this argument, nor does it disclose whether or not it was a full and fair presentation of the plaintiff's case. It then appears that the defendant waived argument and objected to further argument by the plaintiff, but the court, over this objection, permitted another attorney for the plaintiff to make a concluding argument. After this argument

had been made, the defendant moved the court to withdraw it from the consideration of the jury, and this motion was over-ruled. It is claimed by the defendant that this constitutes error, while the position of the plaintiff is that it is a matter within the discretion of the trial court, and not subject to review here. We have made a careful search for the authorities on this subject, and an examination of them may enable us to lay down a rule of general application in such cases. In *Tyre v. Morris*, 5 Har. (Del.) 3, it is said in the syllabus:

"After testimony closed and the case opened by the plaintiff's counsel, if the defendant's counsel submit without argument, the plaintiff is not entitled to a further hearing before the jury."

We find three cases from New Jersey establishing a rule in that state which impresses us as just and reasonable. The first is *New York & L. B. R. Co. v. Garrity*, 63 N. J. Law, 50, 42 Atl. 842, in which the rule is stated in the syllabus as follows:

"When, in the summing up to the jury, the defendant's counsel refuses to reply to the opening argument made on behalf of the plaintiff, on account of its meager and unsubstantial character, it is discretionary with the court to grant or refuse counsel for the plaintiff permission to further address the jury. If such permission is granted, the defendant has a right to be heard in reply to such further address; and, if he exercises that right, the plaintiff is then entitled to make the closing argument."

In *Hackney v. Delaware & A. Telegraph & Telephone Co.*, 69 N. J. Law, 335, 55 Atl. 252, the fourth and fifth paragraphs of the syllabus are as follows:

"Where there are two counsel engaged in a cause for the plaintiff, and one of the counsel, when the evidence is in, opens for the plaintiff, and the defendant's counsel states to the court that he does not desire to reply, and a second counsel is then permitted further to address the jury for the plaintiff against objection, it is error.

"The same counsel who has opened may, in the discretion of the court, after the defendant has stated he has no reply, be permitted to make a further opening under the circumstances

stated in *N. Y. & L. B. Railroad Co. v. Garrity,* 63 N. J. Law, 50, 42 Atl. 842."

In *Siber v. Public Service Ry. Co.,* 78 N. J. Law, 59, 73 Atl. 232, the first paragraph of the syllabus is as follows:

"The trial court may in its discretion allow the opening counsel to make a second address to the jury, although no reply to his first address was made. When such second address has been made, it is error to refuse to permit defendant's counsel to reply to it."

In *Southern Kansas Ry. Co. v. Michaels,* 49 Kan. 388, 30 Pac. 408, the rule is stated by the court in the third paragraph of the syllabus as follows:

"Where the trial court, before the argument to the jury commences in the case, informs the attorneys of the parties that each side will be given an hour and a quarter for argument, and the attorney of the plaintiff announces that he will consume thirty minutes only in opening, and requests the court to notify him when thirty minutes have expired, and the court acts upon his suggestion, and thereupon the attorney for the defendant, after the attorney for the plaintiff has closed his opening, announces that he will waive all argument upon his part in the case, and the court, upon application, refuses the attorney for the plaintiff further time to renew his argument, *held,* that the waiver by the attorney for the defendant of any argument, under the circumstances, is not misconduct on his part, and the court does not commit error in refusing, in its discretion, further time for the attorney for the plaintiff to argue his case."

In *Board of Commissioners of Nemaha County v. Albert,* 6 Kan. App. 165, 51 Pac. 307, the Court of Appeals of that state, in the fifth paragraph of the syllabus, says:

"Where the plaintiff makes an opening address to the jury, the opposite party then waives argument, and plaintiff is then permitted to again reargue the case over objection, and the court refuses to allow the defendant to answer, *held,* that the court erred in permitting plaintiff to reargue the case after defendant waived argument, and erred in refusing the defendant's request to answer."

In *St. Louis & S. F. R. Co. v. Vanzego,* 71 Kan. 427, 80 Pac. 944, the court states the rule in the syllabus as follows:

"Where, on the trial of a case in any district court, the arguments to the jury are limited to one hour on each side, and the

attorney for the party on whom rests the burden of the issue announces that he desires to occupy only thirty minutes, and requests the court to inform him when the time has expired, which the court does, and he ceases, without request for further time, and thereupon the attorney for the opposing party asks that the case be submitted without further argument, it is prejudicial error to permit another attorney to address the jury in behalf of the first party."

In *St. Louis & S. F. R. Co. v. Johnson,* 74 Kan. 83, 86 Pac. 156, the fifth paragraph of the syllabus is as follows:

"The party on whom rests the burden of proof has the right to open and close the argument. He may waive the opening or the closing or both. By waiving the opening he waives his right to close, provided the other party also waives argument. If the other party proceeds to argue the case to the jury, the one who has the burden of the issue is entitled to reply to such argument."

In *Seattle & M. R. Co. v. Roeder,* 30 Wash. 244, 70 Pac. 498, 94 Am. St. Rep. 864, the ninth paragraph of the syllabus is as follows:

"2 Ballinger's Ann. Codes & St. sec. 4993, subd. 5, provides that, after the conclusion of the evidence, the plaintiff may address the court and jury, after which the adverse party may do so in like manner, and be followed by the counsel for the party first addressing the court. *Held,* that where plaintiff's counsel made an argument to the jury, and after its conclusion defendants waived their right to argue the case, plaintiff was not entitled to a further argument in reply."

In *Collins v. Clark,* 30 Tex. Civ. App. 341, 72 S. W. 97, it is said in the fourth paragraph of the syllabus:

"Where the defendant's counsel declines to argue the case after hearing counsel for the plaintiff in the opening, it is not error for the trial court to refuse to allow counsel for plaintiff a second argument."

In *Barden v. Briscoe,* 36 Mich. 254, 257, in an opinion by Judge Campbell, it is said:

"It is certainly important to the administration of justice that no one be deprived of the full benefit of counsel. And it ought not to be allowed to counsel by any strategy or artifice to prevent a fair hearing. But it is necessary, in considering this matter, to regard the ordinary course of procedure. Usu-

ally the plaintiff's opening must indicate what the defendants are expected to meet. They have a right to know what arguments are to be urged against them, and this they can only learn from the opening, inasmuch as they have no reply. In most cases, if they do not think the opening requires any arguments to fortify their case against it, they may fairly let the case go to the jury as it stands, and no reply is needed where there is nothing to be replied to. But, while this is true in theory, it is also true that, when all the testimony is in, the defendants know perfectly well before the opening what the line of argument against them must be, and that its effect upon the jury will depend more or less upon the skill and force of opposing counsel in presenting the facts. As only one counsel opens, and as where there are more than one the ground is usually divided, and the junior commonly precedes, the effect of cutting off a reply may be to prevent the whole case from being thoroughly presented. We cannot think that there is any absolute right in a defendant to produce such a result. Every court is bound in fairness to prevent such abuses. But, inasmuch as the propriety of interference must depend upon circumstances, we think the matter comes within those discretionary rules which must, unless in extreme causes, leave the trial judge to determine the course of the procedure."

In *Henry v. Dussell*, 71 Neb. 691, 99 N. W. 484, the fifth paragraph of the syllabus is as follows:

"Whether or not, after argument by counsel for plaintiff to the jury, the defense can cut off further argument by waiving argument on his own behalf, is a matter within the sound discretion of the trial court, regulating the procedure of the trial."

In *Conrad v. Cleveland, C., C. & St. L. Ry. Co.*, 34 Ind. App. 133, 72 N. E. 489, the fourth, fifth, and sixth paragraphs of the syllabus are as follows:

"Although Burns' Ann. St. 1901, sec. 545, gives the party having the burden of the issue the right to open and close the argument, and requires him to disclose in the opening all points relied on in the cause, yet questions pertaining to the argument of counsel and the order in which they shall speak are addressed to the discretion of the trial court, and an appellate court will not interfere except in extreme cases.

"A defendant has no absolute right, by failing to argue a case to the jury, to preclude plaintiff from making a closing as well as an opening argument.

"A judgment will not be reversed for the refusal of the court to permit plaintiff to make a closing argument to the jury, where defendant failed to make any argument after plaintiff's opening, and there was nothing to prevent the opening from being made as complete as possible, and there was nothing to show that the conclusion of the jury would have been different, had a closing argument been made."

In *Pittsburg, Cincinnati & St. Louis Ry. Co. v. Martin*, 82 Ind. 476, it is said in the syllabus:

"After the close of the evidence, one of the plaintiff's counsel addressed the jury, whereupon the defendant's counsel being, on inquiry, told by the associate counsel for the plaintiff that he did not wish to say anything in the opening, declined to make any answer, whereupon said associate, over the defendant's objection, also addressed the jury, and then the defendant's counsel declined to argue. *Held,* that the discretion of the court was not abused, and there was no error."

It will be observed from this extended review of the authorities that some of the courts regard the question as resting almost wholly within the discretion of the trial court, and decline to interfere with that discretion unless there is a showing of prejudice. As the effect of an argument cannot be ascertained, it is practically impossible to show an abuse of discretion, and therefore the rule leaving the matter within the discretion of the trial court in substance takes the subject out of the controlling power of this court, and the result of such a rule would be that the practice in the various districts might be different, and that the practice in any one district might change upon a change of the personnel of the trial court. It therefore seems to us that this rule is too broad, and that some uniform system should prevail throughout the state.

It will also be observed that in some of the states the ruling of the court permitting a second argument is made reversible error. This rule, it seems to us, extends too far in the opposite direction, as there should be some discretion exercised by the trial court, but in harmony with a fair and just general rule of practice. The right of argument is of the highest importance, and should be safeguarded in such a way as to protect both

parties. He upon whom the burden rests has the right to open and close, but it is manifestly unjust to permit him to make a wholly incomplete and unfair presentation of the case, and reserve the whole force of the argument for a closing speech, as this practice does not give to the opposing party a fair chance to reply. On the other hand, it should not be within the power of the defendant to unduly control the method of argument of the plaintiff. It seems to us that the weight of authority and sound reason support the following rule. In his opening argument the plaintiff should fully and fairly present his case to the jury. If he does so, and the defendant elects not to argue the case, the plaintiff should not be allowed to present further argument. If the plaintiff does not fully present his case, and the defendant waives his argument, the plaintiff should not be permitted to make a closing argument; but if the court, in the exercise of sound discretion, thinks the plaintiff should have leave to further present his case, then the defendant should have a right to reply to the argument, subject to the plaintiff's right to close. But whether or not the plaintiff, under these circumstances, shall be permitted to make further opening argument, is a matter resting within the discretion of the trial court.

It is also assigned as error that the court erred in overruling the motion for judgment on the pleadings. As the answer alleges that the provision of the contract which has been quoted and several others were valid under the laws of Arizona, and as no reply was filed to the answer, the motion should have been sustained.

The same may be said of some of the other assignments of error, but as the case should be reversed and remanded, and as the trial court may permit a reply to be filed which may present a different aspect of the case than that now presented, we will not further consider these assignments of error. There are several decisions of this court having a more or less direct bearing upon them which will doubtless be presented to the trial court at the next hearing, and these decisions, together with the rule laid down here, should insure the correct trial of this case.

For the errors herein recited, we think the decision of the trial court should be reversed and remanded.

By the Court: It is so ordered.