TRACY v. BALTIMORE & O. R. CO. et al.[1]

(District Court, E. D. Pennsylvania. December 7, 1899.)

No. 36.

1. NEGLIGENCE—MAINTENANCE OF JETTY—INSUFFICIENT MARKING.
Where a jetty, which was built to protect a dock from mud that would be carried in by the tide, was suffered to be pressed out of line by the mud deposited against it, and was not visible at high tide, nor marked in any way except by a group of piles at the extreme end, the dock owners were held liable for an injury to a tug which struck the submerged and projecting portion of the jetty while attempting to back out of the dock.

2. SAME—CONTRIBUTORY NEGLIGENCE.
Although the master of the tug had often used the dock before, and knew its condition, *held*, that he was not required to know the exact line of the jetty; and a swerving of a few feet, sufficient to strike it, would not charge him with contributory negligence.

3. SAME—EVIDENCE.
A photograph of the jetty, taken three months after the accident, is competent to show its condition.

In Admiralty. This was a libel in personam by the master of the tug Fidget for an injury caused to the tug by the defective condition of a jetty maintained by the defendants to protect their dock, which the vessel was lawfully using. The facts are stated in the opinion.

Willard M. Harris, L. Levering Jones, and Hampton L. Carson, for libelant.

William H. Addicks, for respondents.

McPHERSON, District Judge. In 1895 the Baltimore & Ohio Railroad built a dock extending into the stream from the west bank of the Delaware river. A wharf was constructed for the reception and loading of freight, and a jetty of timber was erected parallel with the wharf, and south of it about 75 feet; the object of the jetty being to prevent mud and refuse from being carried into the dock by the tide. At first the jetty was straight, but it was soon pressed out of line by the increasing quantity of mud that was deposited against its

---

[1] Reported by Arthur G. Dickson, Esq., of the Philadelphia bar.

south side. In March, 1899, the deviation was 7 or 8 feet at some points, as is shown by a photograph that was taken in June, but represents with substantial accuracy, I have no doubt, the condition that existed three months before. At its eastern end the jetty terminated in a group of piles that was always several feet above the surface of the river, even at high tide. But between these piles and the shore the main body of the structure was so much less in height as to be several feet under water when the tide was high. At such stage of the water nothing indicated the northern line of the jetty, except the group of piles at the eastern end. No posts or other marks pointed out where the northern line had been pushed into the dock, and where, therefore, it had become a danger to navigation.

In March, 1899, the tug Fidget, in charge of Isaac Tracy, master and part owner, towed a schooner to the wharf, and, having discharged this duty, tried to back out of the dock between the schooner and the north line of the jetty. It was daylight. There was no wind. The master was in the pilot house, directing the movement of the vessel, and the attempt was slowly and cautiously made. But the tide was at flood, the main body of the jetty was submerged and invisible, and one result of the effort was that the tug's propeller struck the submerged portion of the jetty, breaking the shaft; this being the injury complained of. During the previous three years the master had often towed vessels into the dock, although not since the middle of December, 1898, and knew its condition.

Upon this state of facts, the court is asked to hold the respondent liable for negligently maintaining a structure that was dangerous to navigation. The complaint is directed against the defective condition of the jetty, "which, at the place where this collision occurred, projects, by reason of imperfect construction, out into the dock to such an extent as to seriously impede and affect the navigation thereof"; it being further averred "that this deviation is neither apparent, nor is there any effort made on the part of the defendant company to warn mariners of its dangerous character." The libelant may have intended to charge defect in the original construction, as well as negligence in maintaining; but, if such intention existed, the charge was not proved. Negligence in maintaining, however, is, I think, sufficiently established. It would have been easy to mark the northern line of the jetty by bolting on pieces of timber long enough to project above the water at all times, especially at the points of greatest deviation; and, in my opinion, some such marking was a duty that the respondent owed to the vessels that were invited to use the dock, and were thus assured that it was in a reasonably safe condition. No doubt, the master of the tug knew the condition of the jetty, and was therefore chargable with exercising such caution as was reasonable in view of such knowledge; but I do not find anything in the testimony to convict him of contributory negligence. An error of a few feet was enough to cause the injury, and he could not fairly be asked to carry in his mind so accurate a picture of the winding line of the jetty, that he could know to a yard or two just where it was bulging under the water, and where it was retreating. As long as the line was straight, the piling at the end may, perhaps, have been a

sufficient guide, but I do not think it was sufficient after the line had become as crooked as the testimony discloses.

It may be desirable to add that I have given no weight to Capt. Lambert's testimony concerning a similar accident to his boat, the conditions being in some respects materially different.

There must be a decree for the libelant, but not for the full amount of the claim. The bills for repairs will be allowed, but I think the item of demurrage has not been fully proved. The wages of the crew are proper to be taken into account, but there is no evidence to support the claim of $66.15 for the boat's loss of time. Even the libelant did not give the court any facts upon this point. All he said was, "Well, we are supposed to have something for the boat;" and there is no further testimony on the subject. The court cannot be expected to guess at the value of a tugboat's service by the day.

A decree may be drawn for $172.52, with interest from March 6, 1899, and costs.