## FRANK SMITH v. THE TERRITORY OF OKLAHOMA.

### (Filed July 17, 1902.)

1. **CONTINUANCE—Denied, When.** It is not error to overrule an application for a continuance in a trial for murder, where it appears that the defendant has sufficient time to prepare for trial, and to procure the attendance of resident witnesses, and to take the depositions of non-resident witnesses, had he exercised reasonable diligence.

2. **SAME.** Where it appears that an application for a continuance of a cause is not made in good faith, but merely for vexation and delay, the court should deny the application.

3. **EVIDENCE ON MURDER TRIAL—What Admissible.** On a trial for murder, statements and declarations by the defendant concerning the deceased a short time before the homicide, and immediately thereafter, are admissible and competent as evidence on behalf of the prosecution, where they tend to show the feeling and state of mind of the defendant towards the deceased.

4. **SAME.** On a trial for murder it is competent for the prosecution to show that the deceased a few hours before the homicide had a large pocket-book in his possession and on his person, and that immediately after he was killed it was found missing, for the purpose of establishing or tending to establish a motive or purpose for the commission of the crime.

5. **SAME—Photographs.** Where photographs are proven to be a true and correct representation of whatever they purport to reproduce, they are admissible and competent as evidence as an appropriate aid to a jury in elucidating the evidence; and this rule applies to persons, places and things.

6. **SAME.** On a trial for murder where it is shown by the prosecution that certain photographs were accurately taken and were true representations of the location of the wounds upon the head of the deceased, they were admissible in evidence.

7. **RES GESTAE—What Constitutes.** Declarations to become a part of the *res gestae*, must accompany the act which they are supposed to characterize and explain; and to make such declarations competent as evidence they must exclude the idea of a narration of past occurances or events. To constitute a part of the *res gestae* two things must occur, namely: (1,) the accompanying acts, and, (2,) the declarations attending the whole transaction.

8. **SAME.** Declarations of a defendant subsequent to the commission of the crime, if wanting in spontaniety and instinctiveness,

are but a person speaking concerning the transaction, and not the transaction speaking through the person who committed the act, and hence they form no part of the *res gestae*, and were properly rejected as self-serving and hearsay declarations.

**9. SAME.** Hence on a trial for murder declarations made by the defendant a few minutes subsequent to the killing as to what was said and done at the time and place of the homicide, and after the defendant had gone two or three hundred yards in the night time and from the scene of the homicide, form no part of the *res gestae* and are therefore inadmissible and incompetent as evidence.

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before C. F. Irwin, Trial Judge.*

*Newell & Jackson,* for plaintiff in error.

*J. C. Strang, Attorney General,* and *Charles H. Woods,* for defendant in error.

Opinion of the court by

HAINER, J.: The plaintiff in error, Frank Smith, was indicted, tried and convicted of the crime of the murder of Edward L. Cotney, and sentenced to the penitentiary at hard labor for life. From this judgment he appeals and assigns a number of errors. It is first claimed by the plaintiff in error that the court erred in overruling defendant's application for a continuance. It appears from the record that the indictment in this case was returned in the district court of Cleveland county on May 21, 1900; the defendant was arraigned on May 23, and interposed a demurrer to the indictment; on the following day the demurrer was overruled, and a plea of not guilty entered; on May 25, the cause was set for trial for May 31; on May 30, the defendant filed an application for a continuance on the ground of absent witnesses, and that counsel for defendant did not have sufficient time to prepare for trial; and on May 31, the cause

was continued by the court until the next regular term. On October 15, 1900, being the next regular term of the district court of Cleveland county, this cause was called for trial, and the defendant made a second application for a continuance on the ground of absent witnesses. The county attorney, on behalf of the territory, consented that the affidavit for continuance may be treated and considered as the deposition of the absent witnesses, and thereupon the application was denied. The defendant then made application for a change of venue from the county, supported by the affidavit of two witnesses, that he could not have a fair and impartial trial in said county, on account of the bias and prejudice of the people against him. The application was granted, and the cause was removed to Canadian county. On December 3, 1900, the cause was called for trial in the district court of Canadian county, and a third application for a continuance was filed, alleging as a ground therefor the absence of certain witnesses, which defendant claimed that he was unable to procure. This application was denied by the court, and the cause proceeded to trial. We think the application was properly denied. The defendant had sufficient time to prepare for trial, and to procure the attendance of the witnesses who resided in the territory, and as to those witnesses who did not reside in the territory, he had ample time to secure their depositions, had he exercised reasonable diligence. In *Hyde v. Territory,* 8 Okla. 69, it was held by this court that a continuance of a cause rests largely within the sound discretion of the trial court, and will not be held as reversible error by this court, unless there is clear abuse of discretion.

And in the case of *Kirk v. Territory,* 10 Okla. 46, this court held that it is no abuse of discretion to overrule an

application for continuance where no diligence is shown to procure the attendance of resident witnesses, or to take the depositions of non-resident witnesses.

We think that the record not only shows that the defendant failed to exercise any reasonable diligence, but we are warranted in holding that the second and third applications for a continuance were not made in good faith, but for vexation and delay.

The next error assigned of which the plaintiff in error complains is, that the court erred in admitting incompetent, irrelevant and immaterial testimony on behalf of the territory, prejudicial to the defendant. This objection is addressed to certain testimony given by the witnesses, Eaton, Trice and Sharp, concerning certain remarks made by the defendant immediately before the killing, and a short time thereafter. We think that these statements and declarations made by the defendant were clearly competent for the purpose of showing the feeling and state of mind of the defendant towards the deceased. There was no error in admitting the testimony of the witness, Maxwell, concerning a conversation that he had heard between the defendant and Kitty McIntyre. The defendant stated to this witness that he had killed the deceased. And this was certainly competent evidence as declarations against his interest; and in order to make such declarations admissible, it was necessary for the prosecution to show the place where and the person to whom they were made. The fact that this house was a place of assignation would not be sufficient to exclude the testimony on the ground that it might be prejudicial to the defendant.

It is also claimed that the court erred in admitting testimony on behalf of the territory concerning a pocket

book that had been on the person and in the possession of the deceased a short time prior to the time that he was killed, and that said pocket book could not be found on the person of the deceased or any other place immediately after the killing. It appears from the evidence that the deceased was in the town of Lexington in the afternoon prior to the killing, and that he had on his person and then in his possession a large pocket book. Mrs. Campbell testified that about four hours before the commission of the crime she saw the deceased examining the pocket book, and that she had seen it before, and that he was in the habit of carrying it in plain view of everybody. It further appears that the defendant met the deceased about midnight on October 28, 1899, in a restaurant in the town of Lexington, and that he was introduced to the deceased, Edward L. Cotney, by Will Elkins; that the defendant in company with Will Elkins and the deceased started on foot in the direction of Purcell, and after they had gone about a half a block Will Elkins, the companion of the defendant, stated he was sick, and could not go any further, and then Cotney and the defendant proceeded on their journey down the river toward Purcell. The defendant testifies that as they were approaching the bridge between Lexington and Purcell, the deceased grabbed him and commenced to strike at him with a knife, and then the defendant drew a revolver and attempted to strike him with it. He further testifies that he could not knock him down and he then shot him. The defendant says that he shot two or three times. There was no eye witnesses to the tragedy. The fatal shots were fired and the deceased was killed about an hour and a half after the defendant had met the deceased in the restaurant at Lexington. Soon after his death his person was carefully examined and the pocket book was missing and no trace of

it could be found. In these circumstances we think the court properly admitted this testimony for the purpose of establishing or tending to establish a motive or purpose for the commission of the crime.

The plaintiff in error further complains that the court erred in admitting in evidence certain photographs of the deceased taken after the body had been removed from the scene of the homicide to the residence of his uncle. There were three photographs taken, showing the nature and location of the wounds, and the course taken by the bullet. This testimony was offered in connection with the testimony of the surgeons, and after it was shown that the photographs were accurately taken, and were true representations of the location of the wounds. Where photographs are proven to be a true and correct representation of whatever they purport to reproduce, they are admissible as an appropriate aid to a jury in applying the evidence; and this rule applies to persons, places and things. They are admissible on the same principle that applies to diagrams or maps which, upon proof of their accuracy and correctness, are competent evidence.

This same question was before the court of appeals of New York in 1891, in the case of *People v. Fisk,* 125 N. Y. 136, 26 N. E. 391, in which case the following rule is laid down:

"Photographs of the place of the killing, and of deceased's head and neck, showing the wound, shown to be accurate, were admissible in evidence."

Mr. Justice Earl, in delivering the opinion of the court said:

"The district attorney presented in evidence a photograph of the place where the homicide was committed, and also a photograph of the dead man's head and neck, showing the wound; and it is now claimed that this evidence was incompetent. It was proved that the photographs were accurately taken, and were true representations of the barber shop, and the location of the wound; and such evidence is now everywhere held to be competent. (*Ruloff v. People,* 45 N. Y. 213; *Cowley v. People,* 83 N. Y. 464; *People v. Buddenseick,* 103 N. Y.497, 9 N. E. Rep. 44; *Archer v. Railroad Co.* 106 N. Y. 589, 13 N. E. Rep. 318.")

In *Franklin v. State,* 69 Georgia 36, 47 Am. Rep. 749, the supreme court of Georgia in discussing this subject, said:

"A photograph of the wound of the deceased was admitted as evidence over objection of defendant. The throat of the deceased was cut; the character of the wound was important to elucidate the issue; the man was killed and buried, and a description of the cut by witnesses must have been resorted to; we cannot conceive of a more and truthful witness that the sun, as its light stamps and seals the similitude of the wound on the photograph put before the jury; it would be more accurate than the memory of witnesses, and as the object of all the evidence is to show the truth, why should not this dumb witness show it? Usually the photograph is introduced to prove identity of person, but why not to show the character of the wound? In either case it is evidence; it throws light on the issue." (Citing with approval the following authorities: 1 Bish. Crim. 1097; Whart. Crim. 544.)

In *Dederichs v. Salt Lake City Railroad Company,* reported in Book 35, L. R. A. page 802, it was decided by the supreme court of Utah in a recent case that:

"Where a plain picture or representation produced by the art of photography is verified as a correct representa-

tion of the locality at the time of the accident, it is admis-
sible in evidence to enable the court or jury to understand
and apply the established facts to the particular case. Such
photographic scenes are admissible as appropriate aids to
the jury in applying evidence, whether it relates to per-
sons, things or places."

These photographs were competent evidence, and they
were properly admitted by the court.

The plaintiff in error complains that the court erred
in excluding a part of the testimony of A. V. Smith in
regard to declarations made by the defendant to him a
few minutes after the homicide. The evidence leading up
to the exclusion of this testimony dislosed that the wit-
ness, Smith, was the father of the defendant; that he resided
near Lexington, a short distance from where the homicide
occurred; that he was at home and in bed at the time the
shooting and killing occurred, and heard the shoots that
were fired; that the defendant reached his father's house two
or three minutes after the shooting occurred. The defense
then sought to show by this witness what the defendant
had said and done at the time and place of the commission
of the crime. Upon objection by the territory this evidence
was excluded by the court. The testimony sought to be
elicited from the witness did not come within the rule that
it was a part of the res gestae. And in this connection it
must be borne in mind that the declarations of the defend-
ant to the witness were not made at the place of the homi-
cide but at the home of the defendant's father, which was a
short distance from where the shooting occurred. The
defendant while going from the scene of the homicide to
where this witness resided had sufficient time and oppor-
tunity to pause and think over the enormity of his crime,
and make up a story which would in some measure at least

exculpate him from his own criminal acts and conduct. His declarations therefore to his father could not be regarded as original or primary evidence, but were in the nature of self-serving declarations of the defendant, and a mere narration of a past occurence. The general rule is that declarations to become a part of the *res gestae* must accompany the act which they are supposed to characterize and explain, and must so harmonize as to be clearly one transaction. To make such declarations competent as evidence they must exclude the idea of a narration of past occurrences of events, and they must have been made contemporaneous with the transaction or act which they are supposed to characterize and explain. And to constitute a part of the *res gestae,* two things must occur, namely: The accompanying acts, and the declarations attending the whole transaction. We think that this case comes within the rule announced by the court of appeals of the state of Texas, in the case of *Jones v. State,* 3 S. W. Rep. 230, where it was said:

"Declarations of a defendant subsequent to the commission of the offense, if wanting in spontaniety and instinctiveness, are but the party talking about the facts, and not the facts speaking through the party, and form no part of the *res gestae,* but are self-serving declarations, and as such are properly rejected as evidence."

In *State v. Brown,* 64 Mo. 367, statements made immediately after the shooting while the defendant was present, and the deceased was lying where he fallen, that defendant "had a knife in his hand" were held no part of the *res gestae.*

In *King v. State,* 65 Miss. 576, a declaration made by a person after his arrest but little more than a minute after shooting another, as to the reason why he shot him,

is inadmissible, being a mere statement in regard to a past transaction.

In *Clore v. State,* 26 Texas Appeals, 624, it was held that statements by a man who has committed a homicide, made to his wife after reaching home, two and one-half miles from the place of the homicide, are not admissible as part of the *res gestae.*

In *State v. Rider,* 95 Mo. 574, it was held that declarations by defendant a few minutes after the killing, and after he had gone two or three hundred yards in the night, from the scene thereof, are inadmissible.

Hence we are of the opinion that the evidence was clearly inadmissible and incompetent, and the .objection was properly sustained by the court.

The next error assigned is that the court erred in its instructions to the jury. It is claimed that the court erred in giving instruction 20. We think this istruction comes within the rule announced by this court in the case of *Kirk v. Territory,* 10 Okla. 75, and when this instruction is taken in connection with the other instructions covering the subject of justifiable homicide, and in light of all the evidence, we think that no prejudicial error was committed.

It is next urged that the court erred in giving instruction 22. It is claimed that this instruction is erroneous, confusing and misleading. It is as follows:

"As a matter of law, no one has a right to kill another even in self defense, unless such killing is apparently necessary for such defense. Before a person can justify taking the life of a human being on the ground of self defense he must, when attacked, employ all reasonable means within

his power, consistent with his safety, to avoid the danger
and avert the necessity for the killing."

We think that this instruction correctly states the law
as applied to the evidence in this case, and especially when
taken in connection with the preceding instruction, which
is as follows:

"The court instructs the jury that the law is: If a
person is assaulted in such a way as to induce in him a reason-
able belief that he is in actual danger of losing his life, or suf-
fering great bodily harm, he will be justified in defending
himself, although the danger be not real, but only apparent.
Such person will not be held responsible, criminally, if he
acts in self defense, from real and honest convictions as to
the character of the danger, induced by reasonable evidence,
although he may be mistaken as to the extent of the actual
danger. A person need not be in actual imminent peril
of his life, or of great bodily harm, before he may slay his
assailant; it is sufficient if, in good faith, he has reasonable
belief, from the facts as they may appear to him at the time,
that he is in such imminent peril."

In view of the importance of the case we have examined
not only the instructions which counsel claim were errone-
ous, but all the instructions given by the court, and we are
of the opinion that the instructions when taken together
fairly and correctly state the law as applied to the evidence
in this case.

Lastly it is claimed by plaintiff in error that the
verdict is not sustained by sufficient evidence. We do not
think so. After a careful and critical examination of the
entire record we think that the evidence is entirely suffici-
ent to sustain and uphold the verdict of the jury. And it
is the settled rule of this court that where the evidence
reasonabl, supports the verdict of the jury, and the court

has properly instructed the jury as to the law of the case, and a motion for a new trial has been denied by the trial court and the verdict of the jury approved, this court, on appeal, will not undertake to invade the province of the jury, by weighing the testimony and disturb the verdict of the jury. (*Douthitt v. Territory,* 7 Okla. 55.)

There being no error in the record prejudicial to the rights of the defendant, and believing that substantial justice has been done in this case, the judgment of the district court of Canadian county is therefore affirmed.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.