## ST. LOUIS & S. F. R. CO. v. DALE.

Nô. 2122. Opinion Filed November 19, 1912.

(128 Pac. 137.)

1. WATERS AND WATER COURSES—Railroad Construction—Overflowing Lands. If a railroad company so constructs its roadbed and ditches as to divert surface water from its usual and ordinary course, and by its embankment, ditches, or artificial channels causes such water to be conveyed to a particular place, and thereby to overflow the land of another proprietor which, before the construction of such road, ditches, or channels, did not overflow, the company will be liable to such proprietor for the injury.

2. APPEAL AND ERROR—Review—Verdict. Where a question of fact is submitted to a jury upon issues joined by the pleadings, and there is evidence reasonably tending to support the verdict, the same will not be disturbed in this court on appeal.

3. EVIDENCE—Opinion Evidence—Value of Growing Crops. Same as third paragraph of syllabus in Chicago, R. I. & P. Ry. Co. v. Johnson, 25 Okla. 760, 107 Pac. 662, 27 L. R. A. (N. S.) 879.

4. SAME—Photographs—Admissibility. Photographs, duly verified, are admissible in evidence as aids to the jury in arriving at an

understanding of the evidence, or of the situation or condition or location of objects or premises, material and relevant to the issues.

5. **SAME—Weight.** The weight to be given to such photographs by the jury is not of conclusive effect as a matter of law, but depends upon the skill, accuracy, and manner in which taken, and they are to be considered under the same tests as other evidence.

6. **SAME—Admissibility.** The fact that the photographs were taken at a time one and two years after the dates of the respective injuries does not render them incompetent, where offered only for the purpose of showing the topography of the affected country and other permanent conditions, as distinguished from those of a transient or temporary character.

(Syllabus by Sharp, C.)

*Error from District Court, Noble County;*
*W. M. Bowles, Judge.*

Action by J. R. Dale against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans, R. A. Kleinschmidt* and *Fred E. Suits,* for plaintiff in error.

*Henry S. Johnston,* for defendant in error.

Opinion by SHARP, C. The three errors urged as grounds for reversal may be summarized as follows: (1) That the verdict is not supported by the testimony; (2) that there was no competent testimony as to the market value of the crops destroyed; (3) error in the admission of certain photographs introduced as evidence by plaintiff. It is insisted by defendant that whatever damages plaintiff may have sustained were due, not to the agencies complained of by plaintiff, but were attributable solely to back water from Black Bear creek, a nearby stream of considerable size, which submerged the land upon which plaintiff's crop of corn was growing, both during the years 1907 and 1908. If the damages sustained were attributable to this source, and not to the one charged, the verdict of the jury should be vacated and set aside. If, on the other hand, the injury was caused by the negligence of the defendant company in the construction and maintenance of its line of road across the farm cultivated by

plaintiff, and there is testimony reasonably tending to establish this view of the controversy, then the jury reached a proper conclusion, and their verdict upon that ground should be sustained. The plaintiff testified that his place had been flooded by the water from Black Bear creek in the year 1908, but it was not shown at what season of the year, or that it caused any damage. The witness Carter testified that Black Bear creek overflowed in 1908, and the witness thought that the waters backed up under the bridge from the north to the south side of the road on plaintiff's land; that the creek was out of its banks five times that year, and that there were three general overflows in the bottom lands, and that the back waters from Black Bear creek checked the flow of the surface waters, flowing from the adjacent uplands through the ditches intended for drainage purposes; that these heavy overflows covered a portion of the quarter section of land cultivated by plaintiff. The witness Linon testified that the waters of Black Bear creek backed up over a portion, but not all, of plaintiff's land, both in 1907 and 1908; that prior to the construction of the railroad the witness had never seen Black Bear creek back up to a point south of where the railroad was constructed. The witness Mitchell testified that the waters from Black Bear creek when high backed up over a portion of plaintiff's land; that it overflowed a portion of said land in the year 1907, and all in 1908; that in the latter year the waters backed up under the railroad bridge to the lands of plaintiff south of the right of way; that during said year waters from Black Bear creek overflowed the bottom land in May, June, and either October or November. The witness Wright testified that in the year 1908 the waters from Black Bear creek backed up on the south to near defendant's right of way. The witness Ramsay testified that in the year 1907 and 1908 the waters from Black Bear creek did not back up on plaintiff's land to any extent.

Plaintiff's first cause of action was for the destruction of his corn crop for the year 1907, of the alleged value of $440, and for the destruction of his 1908 corn crop of the alleged value of $528.80, and for $200 exemplary damages. The verdict of the jury was as follows: Damages for the year 1907, $241.53;

for the year 1908, $82.  A part of plaintiff's crop during both years was corn grown in the fields on the south side of defendant's line of road (being the side farthest removed from Black Bear creek), and the verdict of the jury of itself bears evidence that the jury in fixing the amount of the verdict took into consideration that a part of the injury was caused by these back waters. No objections to the court's charge to the jury are here urged as error.

Among other pertinent charges the court gave the following:

"(9)  You are further instructed, gentlemen of the jury, that if you believe from the evidence that the water that overflowed the plaintiff's land was back water from the Black Bear river, and that by reason of the fact that the Black Bear river overflowed its banks and caused the surface water that would naturally flow into the Black Bear river, and by reason of the water backing up from the Black Bear river it was prevented from flowing through this artificial water course by reason of the back water, in that event your verdict should be for the defendant and against the plaintiff.

"(10)  The plaintiff cannot recover for any damages that you find that his crops suffered by reason of back water from the Black Bear river."

These instructions favorably submitted to the jury the defendant's theory of the cause of the damage.  It told them that the plaintiff could not recover for any injury sustained to his crops caused by back water from Black Bear creek.  There was much testimony introduced which tended to show that the damages sustained were attributable, in part at least, to the defendant's negligence, in deflecting the natural and accustomed flow of waters from and across plaintiff's farm, and that, by reason of the improper construction of its roadbed in not providing suitable drainage, the natural flow of the water was obstructed and diverted, and backed up upon, and caused to flow over, plaintiff's crops, causing their total destruction.  While it was shown that an effort was made to provide for an artificial drainage, yet there was positive and direct testimony showing that the ditches provided were not sufficient to carry off all the accumulated surface waters which the roadbed caused to be gathered on the premises. Prior to the construction of the road, the main body of waters

falling upon or flowing over plaintiff's farm was accustomed to find outlet along a small tributary running in a northerly direction across said farm to a point where said waters were discharged in a slough to the north. When the road was constructed, this small tributary or draw was dammed up, and a ditch dug along the south line of the right of way a distance of about 85 rods. Another small draw along and near the east line of plaintiff's place was likewise obstructed, and a ditch was dug along the south side of the right of way in a westerly direction, where the waters from both small streams or draws were discharged to the north through a bridge or culvert, and thence conducted east a distance of fifteen or twenty rods along the north line of the right of way to the east line of plaintiff's farm, where another ditch was located, which carried the waters north to the northeast corner of plaintiff's land. Thus it was that the natural flow of waters was deflected.

This court in *Chicago, R. I. & P. Ry. Co. v. Johnson,* 25 Okla. 760, 107 Pac. 662, 27 L. R. A. (N. S.) 879, and *Chicago, R. I. & P. Ry. Co. v. Davis,* 26 Okla. 434, 109 Pac. 214, has passed squarely upon the question here presented, and announced the rule that if a railway company so constructs its roadbed and bridges as to divert surface waters from their usual and ordinary course, and by its embankment, ditches, or artificial channels, causes such water to be conveyed to a particular place, and thereby to overflow the land of another proprietor, which before the construction of such road, ditches, or channels did not overflow, the company will be liable to such proprietor for injury. See, also, *Chicago, R. I. & P. Ry. Co. v. Groves,* 20 Okla. 101, 93 Pac. 755, 22 L. R. A. (N. S.) 802; *Cole v. Missouri, K. & O. R. Co.,* 20 Okla. 227, 94 Pac. 540, 15 L. R. A. (N. S.) 268.

There being evidence reasonably tending to show that the injury was caused by the defendant's negligence in the above particulars, the judgment of the trial court should not be disturbed. *Great Western Mfg. Co. v. Davidson Mill & El. Co.,* 26 Okla. 626, 10 Pac. 1096; *Indian Land & Trust Co. v. Taylor,* 25 Okla. 542, 106 Pac. 863; *Loeb v. Loeb,* 24 Okla. 384, 103 Pac. 570; *Chicago, R. I. & P. Ry. Co. v. Broe,* 23 Okla. 396, 100 Pac. 523;

*Bird v. Webber,* 23 Okla. 583, 101 Pac. 1052; *Chicago, R. I. & P. Ry. Co. v. Mitchell,* 19 Okla. 579, 101 Pac. 850; *New State Grocery Co. v. Wiles,* 32 Okla. 87, 121 Pac. 252; *Davis v. Williams,* 32 Okla. 27, 121 Pac. 637; *Oschner v. Chenoweth,* 32 Okla. 204, 120 Pac. 657.

The objection that there was no competent evidence as to the market value of the crops destroyed is not well taken upon the authority of *Chicago, R. I. & P. Ry. Co. v. Davis, supra,* in which the identical question was passed upon by the court. Several farmers testified to the value of the growing crops at the time of their destruction, and the plaintiff was cross-examined at length by defendant as to his means of arriving at the value, the probable yield under proper cultivation, the value of the crop when matured and ready for market, the expense of the remaining cultivation necessary, and the cost of gathering.

Objection was made to a number of photographs taken by Henry S. Johnston, attorney for plaintiff. These photographs were identified, not only by Mr. Johnston, but by a number of plaintiff's witnesses. They were taken at different times in the month of May, 1909, and were offered for the purpose of showing the topography of a portion of the territory affected, including the lands cultivated by plaintiff, the length and extent of the ditches, and the timber and other permanent things. In offering the photographs in evidence the following statement was made by counsel:

"There is no pretense that they show the crop conditions or the flood conditions at that time. All I expect to show by them is the topography of the country, the length and extent of the ditches, and the timber and other permanent matters and things. As to transient and temporary conditions, I disclaim introducing them for any purpose of this character."

The photographs were shown to be true and correct representations of what they purported to reproduce at the time taken, and, having been so proven, and being relevant to the issues, were admissible as an appropriate aid to the jury in considering and applying the evidence. *Smith v. Territory,* 11 Okla. 669, 69 Pac. 805; *Morris v. State,* 6 Okla. Cr. 29, 115 Pac. 1030; Greenleaf on Evidence (16th Ed.), sec. 439h; Wigmore on Evidence, sec. 792.

Nor do we think the fact that the photographs were taken long after the date that plaintiff's crops were destroyed necessarily rendered the testimony irrelevant or incompetent, though courts should exercise great care in the admission of such character of evidence where changes in conditions have occurred between the date of the occurrence of the act and that of taking the photographs. *Considine v. Dubuque,* 126 Iowa, 283, 102 N. W. 102; *Miller v. New York,* 104 Ap. Div. 33, 93 N. Y. Supp. 227; *Higgs v. Railway Co.,* 16 N. D. 446, 114 N. W. 722, 15 L. R. A. (N. S.) 1162, 15 Ann. Cas. 97; *Tracy v. B. & O. R. Co.* (D. C.), 98 Fed. 633; *McClain v. Lewiston Interstate Fair, etc.,* 17 Idaho, 63, 104 Pac. 1015, 1025, 25 L. R. A. (N. S.) 691, 20 Ann. Cas. 60. It was not assumed that the photographs portrayed either the crop or flood conditions at the time of the injury, but were offered for the purpose of showing the permanent conditions, as distinguished from those of a transient or temporary character.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.