KANSAS CITY SOUTHERN RAIL-
WAY CO. v. WARE.

SAME v. McKISSICK.

Nos. 30054, 30058.   Sept. 23, 1941.

*117 P. 2d 123.*

Joseph R. Brown, of Ft. Smith, Ark., for plaintiff in error.

Ownby & Warren and L. O. Todd, all of Tulsa, for defendant in error.

CORN, V. C. J. This action originated in the common pleas court of Tulsa county. Plaintiff, Mrs. S. B. Ware, defendant in error, sued defendant, the Kansas City Southern Railway Company, plaintiff in error, for personal injuries allegedly resulting from being thrown through an automobile windshield when she was traversing defendant's railroad crossing in Decatur, Ark. Plaintiff, W. H. McKissick, defendant in error, owner of the automobile in which Mrs. Ware was riding, and which was being driven by plaintiff's wife, Mrs. W. H. McKissick, sued defendant for damages to said automobile. Both plaintiffs charged their respective damages to defendant's negligence in maintaining a rough crossing.

The defendant filed motions to quash the service in each case, contending it could not be legally served with process in Tulsa county due to the fact it had no line of railroad and did no business in Tulsa county. The motions were overruled because plaintiffs resided in Tulsa county and the suits had been filed under the Oklahoma foreign corporation venue law. On April 8, 1940, after defendant had filed answers, the cases were consolidated for trial and judgment was rendered for plaintiff, Mrs. S. B. Ware, for $750. A verdict for W. H. McKissick in the sum of $200, on plaintiff's motion, was set aside and new trial ordered. From said judgments, these appeals were duly perfected.

May 16, 1939, plaintiff, Mrs. S. B. Ware, and her sister-in-law, Mrs. W. H. McKissick, driving Mr. McKissick's automobile, were returning from Granby, Mo., to Tulsa, by way of Siloam Springs, Ark. At Decatur, Ark., a few miles north of Siloam Springs, they found the highway closed. North street in Decatur, which traverses defendant's railroad tracks one-half block west of the highway, was designated as the

346

Siloam Springs detour. Mrs. McKissick crossed the first track, a house track, but because the outer or west rail of the second or main line track was elevated, the car was thrown into the air, and when it came to the third track it caught on the east rail of said track. This sudden stop threw Mrs. Ware through the windshield and injured her and damaged W. H. McKissick's automobile. There was no "Slow" sign approaching the crossing, but there was a railroad crossing sign with the word "Stop" thereon in six-inch black letters.

Mrs. Ware testified she was sitting in the car relaxed and did not see the stop sign or crossing sign. She did not call Mrs. McKissick's attention to the railroad crossing. Mrs. McKissick saw the railroad crossing, but she did not see the stop sign. She testified she was traveling at about the rate of 20 miles an hour when the accident occurred.

North street was sparsely graveled, descended from the highway west to within a few feet of defendant's main line track, where it then ascended and traversed said track. The tracks are on a five-degree curve to the east at the point of the North street crossing. The crossing over each of said tracks was level, except the portion across the main line track. The outside rail, or west rail, of the main line track is six inches higher than the inside rail. That difference in elevation caused the unevenness in the crossing, which defendant contends was necessary for the safe operation of its trains. There was testimony of witnesses tending to establish that the only possible means of eliminating the uneven condition which caused the accident would have been to lower the west rail of the main line track, and to do so would jeopardize the safe operation of defendant's trains. The planks between the main line rails ascend from the east rail to the west rail, at which latter point they descend four inches in a horizontal space of ten feet to the east rail of the passing track. For a car to traverse the crossing at an estimated speed of more than 20 miles an hour is hazardous.

The Arkansas law obligates defendant to keep the crossing in a safe condition for highway travelers so long as this may be accomplished without endangering the safe operation of the railroad. Defendant contends that plaintiffs were not damaged by any negligence on its part, consequently defendant is not liable to plaintiffs for their alleged damages; that Mrs. Ware's injuries resulted from her failure to exercise due care by warning Mrs. McKissick to drive the car slower; and that W. H. McKissick's automobile was damaged because Mrs. McKissick attempted to traverse the crossing too fast; then states:

"Defendant submits the trial court erred (1) in overruling its motions to quash service, and (2) in declining to direct verdicts in its favor. In the McKissick case, defendant submits the trial court erred in granting plaintiff a new trial because of the insufficiency of the verdict."

Defendant alleges that it is a Missouri corporation operating a railroad through the State of Oklahoma and other states as a common carrier; that its line of railroad traverses only the eastern portions of Adair, Sequoyah, and LeFlore counties; that it neither has a railroad nor does business in Tulsa county, and that plaintiffs sued it in Tulsa county, where they were residing, and that summons was served on R. M. Rainey, Oklahoma City service agent designated by defendant under the Oklahoma foreign corporation laws.

In the case of Atchison, T. & S. F. Ry. Co. v. Lambert, 32 Okla. 665, 123 P. 428, this court held that a foreign railroad company could be sued under constitutional provisions and the statutes of the state, in the county where the plaintiff resides. The second paragraph of the syllabus of this case is as follows:

"Under section 43 of article 9 of the Constitution, suit may be brought against a foreign corporation operating a line of railway in this state, in the county where the plaintiff resides, although the cause of action did not arise there, and although the defendant has

no service agent in that county, and when there is no part of its line of railway therein."

Defendant contends further that the court erred in overruling its motion for a directed verdict upon the theory that defendant complied with the requisites of the Arkansas law in maintaining the crossing, and that it was in good repair and safe and convenient to travelers so far as the railroad company could make it without interfering with the safe operation of trains. Defendant states in its brief that the undisputed testimony of four civil engineers established that the uneven condition which caused the injuries could not have been eliminated without jeopardizing the safe operation of defendant's trains.

George Straughan, a civil engineer, testified on behalf of plaintiff that he had made a survey and a scale drawing of this crossing, and that there was a difference of approximately six inches elevation between the rails of the main line track, and that just to the west of the west rail of the main line track there was a five-inch drop to the east rail of the next track to the west, commonly called the passing track; that there was a distance of nine feet from the west rail of the main line track to the east rail of the next track to the west, just referred to.

The witness Kueblar, a civil engineer, testifying on behalf of the defendant, testified that there was one track to the east of the main line track, called the house track, which was practically level, and there was then a rise of six or seven inches from this track to the east rail of the main line track. This witness, on cross-examination, concerning whether or not the two tracks west of the main line track could have been elevated to the level of the west rail of the main line track rather than having the five-inch drop from this west rail as had been testified to, stated:

"Q. I see, as a particular proposition, then, could not the west track be elevated with the main line track, so far as utility and possibility of usability is concerned? A. That is not done at any

place. Q. I did not ask you that. I am asking if there is any reason why it could or could not be done, is there any reason why? A. It could be made level with that line, yes. . . ."

This testimony undoubtedly required the submission of the case to the jury. The evidence of both plaintiff and defendant was to the effect that in going over this railroad crossing traveling toward the west, the first track crossed was practically level, and then an immediate ascent was made to the east line of the main line track, and a further ascent made in crossing the main line track, and that immediately west of the main line track there was a sharp descent.

In St. Louis & S. F. Ry. Co. v. Prince, 145 Okla. 194, 291 P. 973, the court said in the second paragraph of the syllabus:

"Where crossing is unusually dangerous . . ., it is the duty of the railway company to exercise such reasonable care and take such precautions as common prudence would dictate, taking into consideration the nature of the crossing; and whether or not . . . crossing is unusually dangerous is a question for a jury unless only one conclusion can be drawn by all reasonable men from the evidence relative thereto."

Under these propositions the defendant contends that the negligence of the driver of the automobile barred any recovery, and that the driver, Mrs. W. H. McKissick, was guilty of negligence which caused the accident. It appears there is evidence of negligence on the part of the railroad company in the maintenance of the crossing sufficient to require the case to be submitted to the jury. It is elementary in this state that the question of the negligence of the driver of the automobile was one of contributory negligence, which, under our Constitution, is a question also for the jury.

The defendant further contends that the court erred in granting the plaintiff, McKissick, a new trial, on the theory there was no evidence that the car had to be repainted and there was no evidence that all the repair work done on

the car was required because of the accident, and the jury so found.

One witness testified that he examined the car, detailed the nature of the damage, and repaired it in his garage at a total cost of $327.

In Mead et al. v. Snapp, 180 Okla. 214, 68 P. 2d 771, the first paragraph of the syllabus is as follows:

"The Supreme Court will not reverse the ruling of the trial court granting a new trial unless it can be seen beyond all reasonable doubt that the trial court has manifestly and materially erred with respect to some pure, simple, and unmixed question of law, and that except for such error the ruling of the trial court would not have been so made. The Supreme Court will very seldom and very reluctantly reverse the decision or order of the trial court which grants a new trial."

Judgment affirmed.

WELCH, C. J., and OSBORN, GIBSON, and DAVISON, JJ., concur.