**MISSOURI, KANSAS AND TEXAS RAILROAD COMPANY, a Corporation, and E. D. Simmons, Plaintiffs in Error,**

v.

**Leah CASTER, Defendant in Error.**

**No. 40436.**

Supreme Court of Oklahoma.

Jan. 19, 1965.

Rehearing Denied Sept. 21, 1965.

Application to File Second Petition for Rehearing Denied Jan. 25, 1966.

68

Arthur G. McComas, Elk City, for plaintiffs in error.

Royse & Meacham, Elk City, for defendant in error.

JACKSON, Vice Chief Justice.

In the trial court, plaintiff Leah Caster sued the defendants, Missouri, Kansas and Texas Railroad Company, and E. D. Simmons, for damages resulting from a railroad crossing accident in which Mrs. Caster's husband was killed. Simmons was the engineer of the train which was involved in the accident. After $15,000.00 verdict and judgment for plaintiff, defendants appeal.

In this court four propositions are presented, the first being that the court erred in overruling defendants' demurrer to plaintiff's evidence and motion for directed ver-

dict, and the second being that there is no evidence of primary negligence on the part of defendants which was the proximate cause of the death of plaintiff's decedent, but that the evidence showed that the accident was caused by the decedent's own primary negligence. Since these propositions both go to the sufficiency of the evidence, we will consider them together.

The issues made up by the pleadings included, among others, allegations of negligence on the part of defendants in (1) maintaining its right of way at the crossing where the accident happened in such a way that the visibility of approaching motorists was limited by brush, grass and weeds which were permitted to grow there, and (2) failing to maintain a mechanical warning signal at the crossing, which was alleged to be heavily travelled, operating as a "feeder" for two federal highways and another state highway.

It is too well settled to require citation of authority that a general verdict by a jury is by implication a finding of every fact necessary to support it. On the two allegations of negligence mentioned, we find sufficient evidence to support the jury's finding. At the time of the accident, plaintiff's decedent was driving east on Highway 33 near the north edge of the town of Hammon; defendant's train was travelling generally south toward the intersection of the railroad with the highway. On the question of visibility, the highway trooper who investigated the accident testified that "bushes of some kind" would obstruct the vision of a traveller approaching from the west, as to any train that might be approaching from the north. He also testified that there was a tree which would be a "contributing factor of obstructing the view to the north". The decedent's son in law testified that the view to the north was obstructed by "a tree anyway, and then grass and plum thicket in the right of way". A truck driver who crossed the railroad going west a few seconds before decedent's vehicle, going

east, was struck by the train, testified as follows:

"Q. Is there anything to block your view of the railroad track as you approached that crossing going down the hill to the west?

"A. Well, the track lays in kinda, it has been dug out and it lays low there.

"Q. Is the track in a cut?

"A. Yes, in a cut there.

"Q. * * * I will ask you as you are going back the other way on Highway 33, as you are going back to the gravel pit, as you approached this crossing is there anything to the north there to block your view as you looked up the track that day?

"A. Well, there was Johnson Grass and a plum thicket there, and then the train being in that cut makes it hard."

We hold that the above noted evidence was sufficient to raise a question for jury determination as to whether the defendant railroad company had negligently maintained the crossing in such a way as to permit the visibility of motorists to become obstructed. On this question, plaintiff introduced two photographs of the crossing, and defendants also later introduced in evidence some 23 photographs of the scene, to which reference will be made hereinafter in our discussion of defendants' proposition number four. See Oklahoma Transportation Co. v. Mitchell, 206 Okl. 295, 243 P.2d 350, wherein this court held:

"Where a law action is fairly tried to a jury and the evidence is in conflict, and the issues are submitted to a jury under fair instructions, the verdict of the jury and a judgment based thereon will not be disturbed on appeal.

"Where there is any competent evidence presented by the plaintiff reasonably tending to establish plaintiff's cause of action alleged in his petition, defendant's demurrer to the evidence and motion for a directed verdict should be overruled."

In this case, defendants did not object to any of the trial court's instructions to the jury.

On the second allegation of negligence mentioned (failure to maintain a mechanical warning signal at the crossing) the law in this jurisdiction is stated in the second and third paragraphs of the syllabus in St. Louis-San Francisco Ry. Co. v. Prince, 145 Okl. 194, 291 P. 973, 71 A.L.R. 357, as follows:

"Where a crossing is unusually dangerous, because of its peculiar construction and situation and the amount of traffic passing thereover it is the duty of the railway company to exercise such reasonable care and take such precautions as common prudence would dictate, taking into consideration the nature of the crossing; and whether or not a given crossing is unusually dangerous is a question for a jury, unless only one conclusion could be drawn by all reasonable men from the evidence relative thereto.

"Whether ordinary care or reasonable prudence requires a railroad company to erect and maintain warning signs or other warning devices in addition to those required by statute at a crossing over a public highway in the country which is unusually dangerous is a question of fact for a jury."

See also in this connection Kansas City Southern Ry. Co. v. Ware, 189 Okl. 345, 117 P.2d 123; and Chicago, R. I. & P. Ry. Co. v. Richerson, 185 Okl. 560, 94 P.2d 934.

The evidence we have already summarized with regard to poor visibility was also pertinent on the question of whether the crossing was unusually dangerous. In this case, there was also a stipulation of the parties that a Highway Department Division Engineer, if present, would testify that the official traffic count for Highway 33, immediately east and west of the town of Hammon, was about 650 vehicles per day; and the evidence as to the status of Highway 33 as a "feeder" for the other highways mentioned is not questioned.

Under these circumstances, we are unable to conclude that "only one conclusion could be drawn by all reasonable men" from the evidence on the question of whether the crossing was unusually dangerous and required the railroad, in the exercise of ordinary care, to maintain warning devices in addition to those required by statute.

On defendants' first two propositions on appeal, we therefore hold that plaintiff's evidence was sufficient to withstand defendants' demurrer and motion for directed verdict, and that there was sufficient evidence of primary negligence by defendants which was the proximate cause of plaintiff's injury. Oklahoma Transportation Co. v. Mitchell, supra. Such being the case, the jury's implied finding that plaintiff's decedent was not guilty of contributory negligence is binding on this court. Oklahoma Constitution, Art. 23, Sec. 6.

Defendants' third proposition on appeal is that excessive damages were awarded by the jury, allegedly under the influence of passion and prejudice.

In this connection, it was stipulated that plaintiff paid funeral expenses in the amount of $1345.95, and that the automobile driven by plaintiff's decedent was damaged in the amount of $775.00, leaving only $12,879.05 to be accounted for in the way of compensatory damages. Mr. and Mrs. Caster lived on a farm and their income was from a farming operation. There was evidence that the income from wheat was $2000 per year before Mr. Caster's death, and that thereafter this was reduced to a rental income of $666.00; the income from cotton, which had been about $338.00 per year, was reduced to $100.00. An income of about $700.00 or $800.00 per year from a cattle operation was entirely lost after Mr. Caster died. Mr. Caster was 70 years old at the time of his death, and under a stipulation of the parties, his life expectancy was 11.6 years. In view of this state of the record, we hold that the evidence fully supports the amount of damages awarded.

Defendants' fourth proposition is that the court erred in excluding 19 photographs (35mm. color slides) of the place where the accident happened. We have carefully examined the 19 photographs excluded, as well as the 23 which were offered by defendants and admitted without objection. Without detailing the description of each photograph, it is sufficient to say that the 23 admitted in evidence showed two series of views from points west of the crossing looking generally east, northeast and north; and two series of photographs from points north of the crossing looking generally south, southwest and west. It is fair to say that the photographs admitted provided the jury with a sort of composite "panoramic" view of the scene of the accident from the standpoint of Mr. Caster, driving from west to east on the highway, and another similar "panoramic" view from the standpoint of the engineer of the train, traveling from north to south. There were also a few photographs taken from points south and east of the crossing, looking north and west.

The 19 excluded photographs followed the same scheme as the 23 admitted; that is, they provide a sort of panoramic view from the standpoint of Mr. Caster, of the scene of the accident from points west of the crossing, looking generally east, northeast and north. There were also a few views toward the south. There is one readily apparent difference between the two sets of photographs: in all of the 19 photographs excluded, there is a train pulled by two bright red engines, shown at various positions along the railroad track. The train appears to be made up of a mixture of open top cars of the type commonly used to haul coal or gravel, higher tank cars, and still higher box cars. Some of the lower cars are screened from view in some of the photographs. The box cars, being the highest, are easily visible. Because of the sharply contrasting color, the bright red engines are readily visible in all photographs in which they appear. As best we can tell, the photographed train was composed of two engines, 27 cars and a caboose.

It is conceded that the train appearing in the excluded photographs is not the one that was involved in the accident, which we will call the Simmons train. The only information in the record concerning the Simmons train going to its visibility is that it was composed of two engines, eight cars and a caboose. There is no evidence as to whether the engines were of a bright red color, or of some other duller and less noticeable color. There is no evidence as to whether the train was composed of flat cars, or of the higher and bulkier box cars. It was composed of only about one-third as many cars; however, from our examination of the photographs, we cannot say whether it was so short that it would have been totally screened from view at any point along the railroad tracks.

Plaintiff objected to the introduction of these 19 photographs as follows:

"To which the plaintiff objects for the reason the photographs, and each of them, had in it a train including the engine of the train * * * and the pictures do not show the facts and conditions as they existed on the day the accident happened * * *."

We think this objection was sufficient to apprise the court that one basis of the objection was the fact that the train in the excluded photographs was not substantially the same, on questions concerning visibility, as the one involved in the accident.

In this court, plaintiff argues that the trial court properly excluded the photographs under the rule stated as follows in Montgomery Ward and Co. v. Curtis, 199 Okl. 525, 188 P.2d 199:

"Photographs purporting to depict the conditions at the point of accident may be admitted in evidence, if it is proven or admitted that the objects surrounding the scene of the accident are in the same condition as they were at the time of the acts complained of, but

may not be admitted as a 'stage setting' for the purpose of re-enacting the accident."

Defendants argue that the photographs were admissible and cite the following language of this court from Kansas City Southern Ry. Co. v. Waters, 120 Okl. 1, 249 P. 742:

"The defendant has the right to offer in evidence photographs which are a reproduction of the objects as they existed at the time of the accident. The defendant may offer in evidence photographs which are an accurate reproduction of the grounds at the time of the accident, if these matters become material questions for consideration in the trial of the cause. * * *"

Defendants do not argue that the train in the photographs was "an accurate reproduction" of the one involved in the accident. They argue merely that the photographs were admissible for the general purpose of showing the visibility and topography at the scene of the accident, and that they were offered for that purpose only. However, the record before us does not conclusively support this argument; it shows that the offer of these photographs in evidence was general, and that no offer for a limited purpose was made, even after the trial court sustained the objection. See 20 Am.Jur. Evidence, Sec. 264; 32 C.J.S. Evidence §§ 713, 715 and 716.

Although there may be merit in plaintiff's arguments, we find it unnecessary to determine which of the cited rules was applicable in this case. Assuming for purposes of argument only that the court erred in excluding the 19 photographs, it is well settled that defendants still had the burden of showing that they were prejudiced by the error. Byrd v. McKoy, 183 Okl. 209, 81 P.2d 315; 12 O.S.1961, § 78. In view of the fact that the 19 excluded photographs were substantially the same as the 23 which were admitted, with the exception of the train which was not shown to be the same as, or substantially similar to, the one involved in the accident, on questions concerning visibility, we hold that the error, if any, was not prejudicial to defendants.

The judgment of the trial court is affirmed.

DAVISON, WILLIAMS, IRWIN and BERRY, JJ., concur.

HALLEY, C. J., and JOHNSON and BLACKBIRD, JJ., dissent.

JOHNSON, Justice (dissenting):

The majority opinion in order to affirm the judgment of the trial court relies upon the sole ground that the railway crossing in question was maintained in such a condition that an approaching train was not visible to one traveling on the highway approaching the crossing. All other alleged grounds of negligence are thereby conceded to be insufficient to sustain the judgment.

Despite the limiting of recovery to the lack of visibility, the court endeavors to feebly justify the exclusion of the defendants' nineteen photographs which were the only ones showing an approaching train by saying that they were "substantially the same" as other pictures which were admitted. This statement is correct, except that there was no train shown. This important item is the very crux of the matter. The sole question is whether an approaching train was visible from the railway crossing. It is not enough to say that because other pictures showed growing weeds that it was not error to exclude pictures showing an approaching train.

In Kansas City Southern Ry. Co. v. Waters, 120 Okl. 1, 249 P. 742, we said:

"The defendant has the right to offer in evidence photographs which are a reproduction of the objects as they existed at the time of the accident. The defendant may offer in evidence photographs which are an accurate reproduction of the grounds at the time of the accident, if these matters become material questions for consideration in the trial of the cause. The extent to

which the underbrush and peach orchard affected plaintiff's visibility of the approaching train was a material question in the trial of the case. Photographs of the orchard and grounds would have been helpful to the jury in determining the questions.

"The court committed reversible error in excluding the evidence. Patrick v. Siliskis, 105 Okl. 51, 222 P. 543; St. L. & S. F. Ry. Co. v. Dale, 36 Okl. 114, 128 P. 137; St. L. & S. F. Ry. Co. v. Nichols, 39 Okl. 522, 136 P. 159; Smith v. Territory, 11 Okl. 669, 69 P. 805; St. Louis-San Francisco Ry. Co. v. Horn, 168 Ark. 191, 269 S.W. 576; Faatz v. Sullivan, 199 Iowa, 875, 200 N.W. 321; Braelow v. Klein, 100 N.J. Law, 156, 125 A. 103; Bretall v. Mo. Pac. Ry. Co. (Mo.App.) 239 S.W. 597; Griggs v. K. C. So. Ry. Co. (Mo.Sup.) 228 S.W. 508."

It is attempted to justify this obvious error by citing American Jurisprudence and C.J.S. to the effect that in offering evidence competent only for a particular purpose that the offer must be limited. The case before us does not fall within such rule. The sole and only issue in this case, the gist of the whole matter, is the visibility of a train approaching the crossing in question, and for this purpose such evidence is admissible generally. There is no comparable case cited to sustain the text cited which holds that under certain circumstances that a limited offer must be made.

If evidence is competent for any purpose, it is admissible. See Curtin v. Benjamin (Mass.) 26 N.E.2d 354.

In case it is admitted for one purpose only, it is the duty of the judge to limit its application by his instructions. As was said in Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 128 A.L.R. 1101:

"* * * In such a situation, the established rule is that the evidence should be accepted and the only question to be determined is what precaution should be taken to prevent, as far as possible, the misuse of the evidence.

The instruction of the court, given either upon its own motion or at the request of the opposing party, suffices for this purpose. Wigmore on Evidence, 2d Ed. § 13. * * *"

By analogy, this rule is sustained by a former decision of this court. In the case of Chowins v. Gypsy Oil Co., 185 Okl. 630, 95 P.2d 586, the first paragraph of the syllabus by the court reads:

"Admission in evidence of an instrument of writing competent for some purposes and incompetent for others does not constitute reversible error, where the trial court by its instruction limits the scope of the instrument to a purpose for which same is competent."

I am of the opinion that the exclusion of the defendants' evidence offered in the form of the nineteen photographs constituted reversible error. The paramount issue was the visibility of the train, and nothing could have much greater probative value than pictures of an approaching train taken from the crossing.

The exhibits, if they had been admitted in evidence, would have enabled the jury to determine whether the view of the train was obstructed from the highway. They could have determined whether plaintiff's decedent could have seen the train had he looked in its direction at any time after he drove upon Highway 33. This is true regardless of the color of the locomotive (a point made in the majority opinion) and whether he could have stopped his automobile in plenty of time to avoid the collision with the train. The rejected exhibits were taken within nine days after the accident on and around the scene of the collision, just as were the pictures that were admitted by stipulation of the parties. They were taken at the same season of the year, and the only physical changes at the scene involved were the absence of the truck driven by Jack Furnace, the automobile driven by plaintiff's decedent and the parked automobile of the Herndons. The pictures showed all the area and the physical surroundings, including the vegeta-

tion, trees, highway, railway cut and other points as disclosed from the evidence—all except the particular train involved, but another freight train of the same type was shown on the tracks at various points.

An examination of these pictures clearly demonstrates that the jury could have found that a freight train was plainly visible at all times on the tracks approaching the highway crossing. The pictures were not offered to re-enact the occurrence of the collision, but merely to show the topography of the area and visibility of the train to one on the highway approaching the crossing, which, as heretofore stated, is the decisive question involved in this opinion.

The judgment of the trial court should be reversed and the case remanded for a new trial.

I respectfully dissent.